IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRYAN MARK RIGG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-00771-N |
| | § | |
| BRYAN CASEY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants Bryan Casey and Brent Casey's motion to dismiss for lack of personal jurisdiction [4] and Plaintiff Bryan Mark Rigg's motion to strike [15]. The Court grants Rigg's motion to strike. For the reasons below, the Court grants in part and denies in part Defendants' motion to dismiss.

### I. ORIGINS OF THE DISPUTE

This case arises from the soured relationship between a history writer and the family of the subject of one of his books.[1] Rigg is a historian and author focusing on the events of World War II ("WWII"). Compl. ¶ 1 [1-5]. While visiting WWII sites overseas, Rigg met Herschel "Woody" Williams, a WWII veteran who received a Medal of Honor for his military service. *Id.* ¶ 14. Rigg interviewed Williams and eventually wrote a book about Williams's service in the war. *Id.* ¶ 15. While confirming the factual accounts of Williams and his supporting sources, Rigg discovered evidence that led him to believe

---

[1] The factual summary in this section is based primarily on the factual allegations in Rigg's complaint.

ORDER – PAGE 1

pieces of their narrative about Williams's actions in the war and Medal of Honor award were untrue. *Id.* ¶¶ 16-21. Rigg's relationship with Williams and his family deteriorated when they learned Rigg intended to publish these discoveries in his book.

Defendants are two of Williams's grandsons who were involved in the development process and publication efforts for the book. Rigg alleges that during negotiations with Williams and his family for a contract concerning distributions of the book's proceeds, Defendants began making unacceptable demands regarding the book's contents and various other contract terms. Compl. ¶¶ 23-25. After contract talks broke down, Defendants called Rigg and "informed him that they would destroy his career and ruin his reputation if he did not drop the story." Pl. Resp. Br. 4 [10]; Compl. ¶ 26. Defendants then attempted to shut down the project by making false claims about the book's accuracy to various institutions and individuals and threatening some of them with litigation. *See* Compl. ¶¶ 28-31. After Defendants' efforts caused problems with publishers, Rigg resorted to self-publishing his book, which he titled *Flamethrower: Medal of Honor Recipient Woody Williams, Iwo Jima, and World War II in the Pacific* ("Flamethrower"). *See id.* ¶ 32; Defs.' App. 55 [59].

Rigg filed this lawsuit against Defendants for defamation, business disparagement, tortious interference with contract, and tortious interference with prospective business relations. Defendants filed a motion to dismiss arguing this Court lacks personal jurisdiction over them due to their lack of contacts with the state of Texas. Rigg filed a motion to strike evidence Defendants included in an appendix to their reply brief on the motion to dismiss.

ORDER – PAGE 2

## II. THE COURT GRANTS RIGG'S MOTION TO STRIKE

The Court first addresses Rigg's motion to strike. The Local Rules of this Court "do not provide for reply appendixes and the court normally does not permit a reply appendix to be filed." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *1 n.2 (N.D. Tex. 2000) (refusing to consider a reply appendix filed in support of a motion to dismiss for lack of personal jurisdiction). Because Defendants did not seek leave of the Court to file a reply appendix, the Court grants Rigg's motion to strike and does not consider the evidence submitted with Defendants' reply brief.

## III. LEGAL STANDARDS FOR PERSONAL JURISDICTION

A nonresident defendant is subject to the jurisdiction of a federal court sitting in diversity if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant and (2) exercise of personal jurisdiction by the forum state is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). The Texas long-arm statute confers jurisdiction to the limits of the Constitution. *See id.*; *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984). "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of Constitutional constraints on Due Process." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see Gessmann v. Stephens*, 51 S.W.3d 329, 335 (Tex. App. — Tyler 2001, no pet.).

The Due Process Clause of the Fourteenth Amendment limits the reach of a state court's — and thus a federal court's — jurisdiction over a nonresident defendant. *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977). Specifically, due process requires that two elements be satisfied. First, the nonresident must have purposefully established "minimum contacts" in the forum state such that he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Second, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The minimum contacts analysis required by due process ensures that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472.

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the due process standard. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). General jurisdiction, on the other hand, exists where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "so 'continuous and systematic' as to render [the nonresident] essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Under either a general or specific jurisdiction analysis, however, the

ORDER – PAGE 4

"constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Burger King*, 471 U.S. at 474).

A court must consider the totality of the circumstances of a case when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Id.* at 1192. "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

Rigg, as the party seeking to invoke the Court's power, bears the burden of establishing the Court's jurisdiction over a foreign defendant. *See Pervasive Software Inc. v. Lexware GmbH & Co., KG*, 688 F.3d 214, 219 (5th Cir. 2012) (collecting cases). If a district court, as here, decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). A court must take uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts in favor of the plaintiff. *Pervasive Software*, 688 F.3d at 219-20 (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson*, 755 F.2d at

ORDER – PAGE 5

1165). "But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

### IV. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS FOR CLAIMS ARISING OUT OF THEIR CALLS TO TEXAS

The Court begins by noting that Rigg does not argue that Defendants are subject to general jurisdiction in Texas, and for good reason. Bryan Casey is a resident of Ohio, and Brent Casey is a resident of Kentucky. Compl. ¶¶ 5-6. Nothing in the record demonstrates either defendant has made contacts with Texas that were "so 'continuous and systematic' as to render [him] essentially at home" in Texas. *Goodyear*, 564 U.S. at 919. The Court now addresses Rigg's arguments that the Court has specific jurisdiction over Defendants.

The Fifth Circuit has articulated a three-step test for conducting the specific jurisdiction analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (quoting *Seifarth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). Rigg bears the burden to establish the first two prongs, after which the burden shifts to Defendants to establish the third. *Id.*

### A. *Defendants' Tortious Communications with Texas Citizens Satisfy the Minimum Contacts Inquiry*

Rigg argues the following actions by Defendants support the exercise of personal jurisdiction in this case: (1) generally conducting business with and directing communications toward Rigg in Texas during the development of Flamethrower; (2) discussing Flamethrower with Rigg at various events in Texas; (3) directing tortious communications to various publishing companies based outside of Texas regarding Rigg and Flamethrower; (4) directing tortious communications to various individuals in Texas and elsewhere regarding Rigg and Flamethrower; and (5) directing Chuck Wright, a Texas resident, to spread misinformation about Rigg on social media. Pl.'s Resp. Br. 1-2.

First, Defendants' various communications and negotiations with Rigg throughout the development of Flamethrower, both inside and outside of Texas, are immaterial because the claims in Rigg's complaint do not arise from those events. *See id.* at 8-9. Each of Rigg's claims instead directly arises from the series of alleged communications Defendants later made to individuals other than Rigg to halt the Flamethrower project by defaming Rigg, disparaging his business, or interfering with his business dealings. Rigg's contention that the parties tried to negotiate a contract to be performed in Texas is also not jurisdictionally relevant because, as stated above, his claims arise from Defendants' communications with third parties, not the contract negotiations. Thus, the Court must next analyze Defendants' third-party communications themselves.

Any communications that Defendants made to parties outside of Texas, even those with tortious contents, do not satisfy the minimum contacts standard here. Rigg's

ORDER – PAGE 7

allegation that he suffered resulting harm in Texas does not, by itself, support specific jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 289-90 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). The parties' relationship originated from a chance meeting overseas, and Defendants did not reach into Texas to solicit Rigg's business. Defendants' communications to publishers and individuals outside of Texas are not sufficiently connected to any intentional conduct by Defendants directed at Texas to constitute purposeful availment of the privileges of conducting activities in Texas. Thus, Defendants are not subject to personal jurisdiction in this case for claims that arise from those communications to parties outside of Texas.

By contrast, Defendants have established minimum contacts for all claims arising out of the tortious contents of communications Defendants sent to Texas residents in Texas, because when "the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Trois v. Apple Tree Auction Ctr.*, 882 F.3d 485, 491 (5th Cir. 2018) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Critically, this rule is categorical, and it is irrelevant that Defendants did not solicit Rigg's business. Additionally, although the only evidence regarding Defendants' lack of knowledge of the location of those individuals is contained in the stricken reply appendix, the Court nonetheless addresses their argument that they lacked knowledge of the communication recipients' location. Defs.' Reply Br. 4. Knowledge of the recipient's location is irrelevant as to whether communications with

tortious contents satisfy the minimum contacts inquiry, and the Fifth Circuit has expressly rejected such a knowledge requirement in the intentional tort context:

> When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes personal availment. . . . It is of no use to say that the plaintiff 'fortuitously' resided in Texas. . . . If this argument were valid in the tort context, the defendant could mail a bomb to a person in Texas but claim Texas had no jurisdiction because it was fortuitous that the victim's zip code was in Texas.

*Wien Air Alaska*, 195 F.3d at 213. Without a doubt, Rigg has alleged sufficient facts to establish a prima facie case of Defendants' minimum contacts with Texas for any tort claims directly arising from the contents of their interstate communications with Texas citizens located in Texas.

Defendants repeatedly cite *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 479 (E.D. Tex. 2019) to argue the Court lacks specific jurisdiction because Defendants did not "reach out beyond one state and create continuing relationships and obligations with citizens of another state." *See* Defs.' Br. Supp. 9; Def.'s Reply Br. 2-5. That case is not binding on the Court, but also Defendants read the cited language too broadly. The court in *CBC Conglomerate* stated that jurisdiction is proper over parties who reach into a state to create continuing relationships with that state's citizens, not that such conduct is required for specific jurisdiction in all cases. *See CBC Conglomerate*, 359 F. Supp. 3d at 479. Further, the quoted language can be traced back to the Supreme Court's opinion in *Burger King*, which is a contract case, and the contacts necessary to wield personal jurisdiction for tort claims arising out of interstate communications are different. *Apple Tree Auction Ctr.*, 882 F.3d at 490; *see also Burger King*, 471 U.S. at 469 n.11

ORDER – PAGE 9

(noting the posture of the case did not require discussion of the resolved tort claims). The lack of allegations that Defendants affirmatively reached into Texas to solicit Rigg's business may be relevant to certain claims based on the parties' relationship, but such allegations are simply not required to establish jurisdiction over claims arising from tortious communications directed into Texas.

### B. Only Some of Rigg's Claims Arise from or Relate to Defendants' Texas Contacts

Because "specific personal jurisdiction is a claim-specific inquiry," the Court proceeds to analyze which claims raised in the complaint arise from or relate to Defendants' communications directed at Texas. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). As explained below, the only claims in Rigg's complaint arising from or relating to communications directed at Texas are those arising from statements Defendants made to Texas residents Bruno Nechamkin and Mike Thornton.

Rigg alleges Defendants intentionally interfered with his prospective movie contract and business relationships by calling Rigg's film industry contact, Bruno Nechamkin, and making false statements and threatening litigation. Compl. ¶¶ 30, 60-63. Nechamkin lives in Texas and stated in a declaration that he was present in Texas when defendant Brent Casey called him with litigation threats that caused a prospective movie deal for Flamethrower to fall apart. Decl. of Nathan Bruno Nechamkin ¶¶ 6-9 [10-2]. There is no record evidence denying that either defendant contacted Nechamkin. Accordingly, Rigg has met his burden to establish a prima facie case of personal jurisdiction over Brent Casey and Bryan Casey as to intentional tort claims arising out of their statements made to Nechamkin.

ORDER – PAGE 10

Rigg also alleges that Defendants contacted a Texas resident named Mike Thornton, making disparaging statements about Rigg and encouraging Thornton to end his relationship with Rigg. Compl. ¶ 31; Decl. of Bryan Mark Rigg ¶ 9 [10-1]. Brent Casey stated in an affidavit that he never discussed Rigg or Flamethrower with Thornton, and Bryan Casey stated he never contacted Thornton at all. Aff. of Brent Casey ¶ 10 [6]; Aff. of Bryan Casey ¶ 9 [6]. However, Rigg submitted a declaration stating both defendants contacted Thornton along with an email Brent Casey sent to a third party indicating he "contacted Mike Thornton, and obviously [Thornton] is very upset that Bryan Rigg is using his name in a false statement," i.e., in the book. Decl. of Bryan Mark Rigg ¶ 9; Pl.'s Ex. 3 [10-1]. Again construing disputed facts in the plaintiff's favor, Rigg has met his burden to establish a prima facie case of personal jurisdiction over Brent Casey and Bryan Casey as to intentional tort claims arising from his Defendants' communications directed at Mike Thornton in Texas.

Rigg first introduced the final communications Defendants allegedly directed into Texas in his response to the motion to dismiss, arguing that Defendants directed communications to Chuck Wright and Texas A&M University Press in Texas. Pl.'s Resp. Br. 8-9. Because Rigg alleges no facts about Wright or Texas A&M University Press in the complaint, none of Rigg's claims arise from Defendants' communications with them.

Rigg's remaining claims do not arise from Defendants' purposeful contacts directed at Texas. The Court holds Rigg has not established a prima facie case of personal jurisdiction as to either defendant with respect to any claims arising from out-of-state communications to parties outside of Texas, including Stackpole Books, Archway

ORDER – PAGE 11

Publishing, University Press of Kansas, Regnery Publishing, Victor Krulak, or Charles Krulak. The record contains no allegations or evidence that any of these entities or individuals is a Texas resident or was otherwise present in Texas while communicating with Defendants. Accordingly, the Court grants Defendants' motion to dismiss as to all claims arising out of Defendants alleged communications with Stackpole Books, Archway Publishing, University Press of Kansas, Regnery Publishing, Victor Krulak, or Charles Krulak.

### C. Exercising Jurisdiction Over Defendants Is Not Constitutionally Unfair

Finally, the Court disagrees with Defendants' contention that exercising personal jurisdiction over them for each of the claims in this case would be unconstitutionally unfair. *See* Defs.' Br. Supp. 11-12. Courts look to a number of factors for this inquiry, including: (1) the burden placed on the defendant; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in the efficient resolution of disputes; and (5) the states' shared interest in furthering social policies. *First Fitness Int'l, Inc. v. Thomas*, 533 F. Supp. 2d 651, 657-58 (N.D. Tex. 2008) (citation omitted). A defendant "must present a compelling case that the presence of some considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King*, 471 U.S. at 477). Defendants make hardly any effort to explain how these factors weigh against the exercise of jurisdiction here beyond restating their rejected arguments that Defendants have not established minimum contacts with Texas. *See* Defs.' Br. Supp. 11-12; Defs.' Reply Br. 7-8. Exercising jurisdiction here would not, as Defendants contend, impermissibly focus on the location of harm rather than where Defendants directed their

ORDER – PAGE 12

activity because, as explained above, the surviving claims involve tortious communications sent *into Texas* that harmed a Texas resident. Defendants have failed to meet their burden to show the exercise of personal jurisdiction in this case would be unreasonable.

## CONCLUSION

The Court grants the motion to strike because Defendants did not seek leave of the court to file a reply appendix. The Court does not have general jurisdiction over Defendants. Because Rigg alleges Defendants committed intentional torts due to the contents of their communications directed into Texas, the Court has specific personal jurisdiction for claims arising from those contacts. Accordingly, the Court denies the motion to dismiss as to Rigg's defamation, business disparagement, and tortious interference with prospective business relations claims arising from Defendants' communications with Bruno Nechamkin and Mike Thornton.[2] Because Rigg has not otherwise met his burden to establish that Defendants purposefully directed their activities toward Texas such that exercising personal jurisdiction would be consistent with due process, the Court grants the motion to dismiss as to all other claims.

Signed January 19, 2022.

David C. Godbey
United States District Judge

---

[2] None of Rigg's tortious interference with existing contracts claims survive because he plead an existing contract only with out-of-state third parties Regnery Publishing and Stackpole Books, and Defendants are not subject to personal jurisdiction for their conduct directed toward those institutions. *See* Compl. ¶¶ 52-58.